v. Chubb Insurance Company of New Jersey May it please the Court, my name is Gary Sasso and I represent Chubb Insurance Company. As we've discussed, the policy of this case limits coverage to management consulting services. We find its services directed toward expertise in banking finance, accounting, risk and systems analysis, design and implementation, asset recovery, and strategy planning for financial institutions. A loss in this case arose from an audit for a food company, not a financial institution. Based on the plain language of that provision, we move for summary judgment. Just months before motions were due, the Supreme Court decided Facebook, which held, under conventional rules of grammar, when there is a straightforward parallel construction that involves all nouns or verbs in a series, a modifier at the end of the list normally applies to the entire series, which generally reflects the most natural reading of a sentence. Quoting Scalia and Garner, a treatise on literary style and grammar. The potential limitation of that case is that it's not applying New Jersey rules of construction. And theoretically, at least, if New Jersey has a different view of how you interpret this sort of stuff, we have to apply New Jersey's rules and not the Supreme Court's federal common law rule. I understand the qualification, Your Honor, but the chronology is very important. And when that argument was made and how it was made is very important. At this stage of summary judgment, we're basically talking about literary style or grammar, not legal canons of construction. Literary style and grammar. Quoting Scalia and Garner. I understand what you mean, of course. Brian Garner. No, I know who Mr. Garner is. Everybody's using canons of construction. Right, exactly, Your Honor. At summary judgment. Exactly, Your Honor. That's where we were. And ECB had very little to say about this on summary judgment. They said, well, in Facebook, there was a comma. And the court mentioned that. And there's no comma here. So that makes a difference. It's true. But the court in Facebook did not rely on that. It relied instead on the fact that the modifying clause appears after an integrated list. We also cited United States v. Bass, another United States Supreme Court case. And the trial court did, too. And ECB said, well, Bass says where there is no comma, there's an ambiguity. And therefore, in our case, the clause has to be construed in favor of the insurer. Well, Bass had nothing to say about that. Bass was a criminal case that dealt with firearms. And it was an extensive discussion of legislative construction and tough policy issues. And the government argued in that case, there's no comma. So the serial modifier must be applied to the immediately preceding noun. Justice Marshall, writing an opinion for the court, echoed Judge Jordan's views, dismissed that argument in a footnote, footnote six, saying, well, grammarians are divided on this. And where grammarians are divided, let alone cheerfully tolerant, we will not attach significance to an omitted comma. That's what Bass did. So based on these cases and the literary and grammarian concerns, the trial court entered summary judgment for those. That was it. That was all the discussion about it at summary judgment. Then ECB moved for reconsideration. And for the first time, ECB argued, well, there are a string of New Jersey cases that treat this as a matter of law, not a canon of construction, not literary or grammarial choice. This is a canon of law. It's mandated under New Jersey law that if you don't have a comma, the series qualifier can apply only to the immediately preceding noun. It's mandated. The judge said, where was this argument on summary judgment? You didn't argue that this was a matter of a legal requirement, let alone a mandate. You didn't argue that this was mandated by New Jersey law. You didn't cite these New Jersey cases to us. This has been waived. And the trial court was correct under a number of authorities we discussed in our briefs, including Sun Life Assurance, which says, a party waives its opportunity to rely on non-forum law where it fails to timely provide the sources of non-forum law on which it seeks to rely. I'm not sure. I mean, I just don't get the waiver argument, and I really don't. I get this. You're trying to draw a line, I guess, between just relying on Scalia and Garner versus relying on, like, some element of New Jersey law. But, I mean, they argued for the statutory – well, they argued for the interpretation at the district court that they are arguing for now, right? They didn't argue it as a legal requirement. They were fussing over grammar and literary style. They didn't present to the trial court. They sandbagged the trial court. Yeah, but I'm saying – Are you saying that to not waive the argument, they had to cite the specific cases that they're citing on appeal? It just seems so odd. They had to argue that this was required as a matter of law, as a matter of New Jersey law, and they didn't. They were arguing over the interpretation of Facebook. So that's where the case stood at that time. Then they moved for reconsideration and said, we've got all this, and the court said it's waived. Now they've taken an appeal. To be fair to you, the cases are all, in my opinion, are all over the place on whether or not asserting a theory without all the particulars is enough, or whether sort of shifting within the theory on appeal for the first time is a problem. You can find cases going both ways on that, especially in our court. You've got Sun Life on the one hand. You have a case that Judge Newsom wrote relatively recently on the other, and you can find strands to support both arguments. The question is, in this case, since everybody agreed that New Jersey law applied, right, why was it wrong for them to do it the way they did it? Because, Your Honor, they raised it on a motion for reconsideration. The judge made that finding of waiver in his order on reconsideration, and they don't challenge that on appeal. They don't challenge that on appeal. So that order of waiver, I think it's perfectly reasonable for a district court to say, look, I'm not going to reconsider my decision. You know, that's fine, but that doesn't tell us how we should review the district court's decision, right? I mean, the question is whether they waived it for purposes of appeal, not whether the district court was right in saying, I'm not going to reconsider because you didn't cite this before. Well, correct, Your Honor. An order on reconsideration is subject to review for abuse of discretion. Now, the court went on and addressed and rejected their argument on the merits on this issue, too, and I'm going to get to that. But the waiver argument is important because here's what they did. They then appealed to this court. In their notice of appeal, they appealed from the order on summary judgment, the order on reconsideration, and the final judgment. And under Rule 34 of the Rules of Appellate Procedure, all of these are merged. But in their initial brief in this court, they mentioned nothing about reconsideration. They don't talk about the arguments presented. They don't talk about the rulings made by the trial court, which is utterly unfair to this court to take a matter up from the trial court to this court and not inform this court about the subsequent litigation proceedings and dispositions by the trial court, asking this court to reach down and review only the order on summary judgment under de novo standard and ignore everything the trial court did on reconsideration, including this finding of waiver. Now, when we called them on that in our response brief, here's what they said in their reply brief. They said, ECB appeals summary judgment as set forth in the district court's amended omnibus order and nothing more. Nevertheless, Chubb spends most of its brief ignoring the amended order and arguing the district court's denial of ECB's motion for reconsideration, which is not on appeal. So they're not appealing. They've abandoned an appeal of the judge's determination of waiver. They've abandoned an appeal on the judge's determination on the merits against them on reconsideration. They've abandoned it. That is a waiver. That's a pretty stark waiver under any case, under any holding, including this court's decision in Sapupo, which says when an appellant fails to challenge properly on appeal, one of the grounds on which the district court based its judgment, he's deemed to have abandoned any challenge of that ground, and it follows that the judgment is due to be affirmed. To accept this procedure would do a terrific disservice to the trial courts and this court. Turning to the merits. To the merits, OK. So let's say that the contract provision is ambiguous. And in that case, it is appropriate for a court to look at extrinsic evidence, which focuses on the party's intent. In this case, as counsel stated or argued, it's Constantine is the relevant party here. Why is it not? Why wasn't it improper for the district court to look at another party's intent at the time the initial contract was made, as opposed to the intent of the party at issue here? All of these insureds were affiliated. They were related. In fact, there was a dispute whether Constantine should even be a party, and they were all affiliated and related. And from 2001 through 2017, new coverage wasn't written. It was simply a renewal of the original policy in 2001, which is why it was appropriate to go back to the application in 2001. Now, let's address the merits and consider what the trial court said and did. The trial court said, you're wrong about these New Jersey cases. As Judge Brasher was saying, they didn't say that this doctrine is mandated in all cases. They say over and over, unless a contrary intention otherwise appears. And the trial court said, contrary intention otherwise appears on the face of this language. Under the plain language, there's no other reasonable way to interpret this than to say, for financial institutions, applies to all of the services listed. It would be absurd. Let me tell you a potential problem for me conceptually, and I don't know which way it cuts. But if you say that this clause, if New Jersey law says that this sort of a thing has to be normally read to modify every item in a series, unless there's a contrary intention, and they've already told you what the general reading of that provision is, how can you draw any contrary intention from the same language? Like, if the language gives you a default position, how can that language ever give you a contrary indication? The same language gives you a contrary indication. It depends on what's said in the series and how it's said. All these cases are different. Most of the cases they cite are legislative interpretation cases. And Kamiansky, one of those cases, Superior Court of New Jersey said, punctuation, though important, is not decisive of legislative intent. They say they have two contract cases. It's really only one. One is an injunction case. The other is a contract case. Yolango had nothing to do with commas. There were four enumerated provisions, and the court said the fourth, as a matter of substance, seems to apply to the third. So what these courts do in New Jersey is they look at the language. Let me ask you, on that point, and follow up to Judge Jordan's question, I think your weakest, to me, the weakest part of your argument is, under your argument, we would read it to say expertise in banking finance for financial institutions, right? Because we would apply the four financial institutions to everything. Accounting for financial institutions, I understand that would make sense. Risk and systems analysis for financial institutions makes sense. What does banking finance for financial institutions mean? Wouldn't that just make it redundant? No, it's not. And the trial court explicitly addressed that issue and said management consulting is provided to banking finance on banking finance issues for financial institutions. So what does that mean, though? Financial institutions have to get banking, and they get debt. And all kinds of financial institutions get loans and debt and so on, and they need management consulting on how to go about that. And it's not at all redundant. All of these services are services provided for financial institutions. Now, ECB hangs a lot of weight on a supposed ambiguity in this language. The trial court didn't find any. He said it would be absurd to read the clause the way they do, applying this limitation for financial institutions only to the last listed service. There's no basis for that. The plain language dictates they apply to all of them. So there is no ambiguity. But as the court was discussing with counsel, the New Jersey Supreme Court has rejected their approach to ambiguity and construing contracts in favor of the insured in Shove versus Prudential. As the court implied, we do have sophisticated parties here on both sides of this deal. So they say that they aren't a sophisticated party. Are they wrong about that? They are absolutely wrong about it. The insured was Konstantin Control Group. It's an international conglomerate that provides sophisticated management consulting to financial institutions. They certainly knew how to ask for broader coverage if that's what they wanted. Further, under New Jersey law, you have to have an ambiguity that's much more consequential than this even to get in that issue. In Hobbs, as one example, District of New Jersey said, an insurance policy is not ambiguous merely because two conflicting interpretations have been offered by the litigants. A genuine ambiguity exists when the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of the coverage. Trial court said, it's just exactly the opposite here. You'd have to be on drugs not to understand this plain language. It's not at all confusing to the insured, especially those insured. Opposing counsel embraces the Cassidy decision. So do we. And the trial court in this case followed that roadmap in Cassidy, District of New Jersey case, in interpreting this contract. That case involved interpretation of a coverage provision on summary judgment. The court said, it can be done by the court. Our job is to ascertain the intent of the parties primarily from the contract, but also attendant circumstances, the objects the parties are striving to attain. We may look at extrinsic evidence, citing Chubb versus Prudential, including the policy. And they looked at the policy there. And on that basis, in that case, said there's no coverage. Here, the 2001 policy asked Constantine, what do you want covered? What kind of professional liability? They wrote management consulting for the financial community. But I understood Constantine to be arguing that their intent as expressed didn't limit them to those financial servicing institutions. That's why I asked my earlier question, which I thought was a little cursory in terms of your response. Yeah, they say, Mr. Marco says that the district court was looking at the wrong thing. And that, hold on, hold on.  Yes, Your Honor. This is, I'm trying to paraphrase Mr. Marco's argument. Without commenting on whether it's right or wrong or not, I'm just giving it to you so you can respond. That when Constantine submitted its application, it, for example, listed BMW as a client. And BMW, despite its financial girth, is not a financial institution. That argument was never made below. This is the first time we've heard that argument. What the trial court looked at was what was presented below. And what was presented below was the application that was filed by Constantine in 2001, where they said, we want coverage for management consulting for the financial community. The coverage was written in 2001. Every year thereafter, it was renewed. It wasn't a newly issued policy. It was renewed. And the coverage language was never changed. All that Constantine added in the record in this case was in 2016-17, they added accounting services. They never added food companies among the services. Where does the language that Mr. Marco is referring to come from? I know you say it wasn't presented, but where does it come from? You'd have to ask Mr. Marco, Your Honor. It's not in the record? We're not aware of it. The argument was not made below. This argument was not made to the trial court below. Okay, Mr. Sasso. Thank you very much. Thank you. Thank you. Okay, Mr. Marco. He says that you didn't make this argument below about what the relevant Constantine application said or listed. We argue it in the appeal. They're the ones... He says it was not in the record below and that the argument was not made below. Whatever the effect of that, respond please. Yes, sir. Every application that was provided to us is in the record in this case. They are part of the record that was in the summary judgment record. I can have it supplementally identify exactly... No, no. If you say it's in the record, that's good enough and we'll find it. A hundred percent. Not every application was produced, but every application that they provided to us in discovery was part of the record on summary judgment. Very importantly, my esteemed colleague says Constantine put financial institutions or financial industry in an application. This never happened because Constantine and Associates didn't even exist in 2001. It didn't exist for another 10 years. That was what control group, for lack of a better term... Correct. Constantine and Associates first appears in 2015-16 as the first named insured. 2016, first named insured. 2017, renewal policy that we're operating under. So you will not see anything in the record where there is Constantine and Associates as an applicant in a policy prior to its very corporate existence. I'm not sure that that matters, I guess. It's hard for me to... Because the point... I think the point of looking at the application is to understand why the document was written the way it was, right? And since the document didn't change, what does it matter that the insurance was taken over by somebody else? Because the intent... Because if you follow... So I actually want to walk one concept back, if I can. Princeton Investment Partners is the governing law of New Jersey, which is that if there's an ambiguity, it inures in favor of coverage. What I was explaining was that if you follow the trail of the case that they cite in Cassidy, it's not the intent of the parties, it was the expectations of the applicant and the expectations of the applicant is, as Judge Jordan rhetorically asked me before against this, I do not know, that, wait a second, BMW is on that application in 2016, right? They're not a financial institution. And so what was the expectation of the insured? It doesn't go into an examination of the historical record of a policy. That's not what it calls for. Second of all, it cites to Shubb versus Prudential, which was an artisanally negotiated policy between two aircraft carrier groups. That is not at all what's going on here. Third, it's kind of funny to explain us as an international conglomerate. We're a New Jersey accounting firm that identified how much money we made a year on those applications, less than $5 million a year. We're not an international conglomerate. We were a New Jersey applicant that makes a few million dollars a year. I don't want to say exactly how much, but it's quite small. It's below $5 million. I know that. There is no kind of sophisticated negotiation of superpowers. So respectfully, Your Honors, you wouldn't ever even look at the policy. You would say, could this language on its face appears? Could accounting be provided to something other than a financial institution? Yes. And because it could, it's a reasonable reading. So the analysis really stops at, is the reading on its face a reasonable reading in our favor? But there are some New Jersey cases, and I'm by no means an expert on any law, much less New Jersey law. There are some New Jersey cases that say just because you have reasonable interpretations on two sides of a question does not necessarily lead to a legal ambiguity, right? And so the question is, how do you parse those cases, and when is it that different valid interpretations lead to ambiguity, and when don't they? Here's what I would say. That's hard. So my answer to you is, is you really only ask one question. Is our interpretation a reasonable one? Because if our interpretation at the face of the language is a reasonable one, the analysis stops there. It doesn't matter whether the other one is reasonable or not. If ours is, by definition, you would inure in favor of coverage, because the worst case scenario is it has some ambiguity to it. It's not crystal clear. And if it's not crystal clear, if you can say the following answer to the question, there is nothing inextricably linked to the concept of accounting that must belong to four financial institutions on the face of that language, then you're saying to yourself, it could go either way. You could argue it either way. Let me ask you to address one thing that you haven't had a chance to address yet. So I think the district court made this point, and they make this point. You know, we're looking at the definition of management consulting services. If accounting means just accounting for anybody, aren't we expanding... I mean, we have... The defined term is management consulting services. Wouldn't accounting sort of swallow up everything going beyond that term? Does that question make sense? Your question makes sense, and here's... I lost your response to it. So management consulting is not a vernacular term, and I think that's something that the judge sort of at the end of his order really... Where the judge sort of, I think, gets a little... I don't want to say confused. It gets a little fuzzy. I'll say the other side gets a little confused, is that it's not a vernacular concept. Management consulting is not a thing. It doesn't have any sort of meaning on its own. It could say A, B, C means. It is a defined term, and because it is a defined term, it is a list of 6, 7, 8, I don't remember, specific services that fall within the definition of A, B, C. Blah, blah, blah. It doesn't have any independent meaning at all. It can't be read into. It can't be said, well, that wouldn't make any sense because a management consultant wouldn't do this. It has no independent structure to it at all. It's a defined term. And because it's a defined term, we should follow what it says. And then there's one last thing, if I can, Your Honor. When the reference was made that the court held in U.S. v. Bass and Facebook that the comma was irrelevant, it's very important to remember that Justice Marshall and Bass says what we have is an ambiguous statute, and that's why they went to the rule of lenity. They would never have gone to the rule of lenity unless it was vague. Second point, in Facebook, Justice Sotomayor says that because there's no comma between the two modifying phrases that immediately precede... The last antecedent was two terms. They were. I said them before, and I'm so sorry. Store and produce, in the TCP case. There was no commas between them. So she said it's an integrated phrase. And because it's an integrated phrase, it's one. And that's a total distinction. And yes, there was a comma before the modifier to which it applied to, and that's why it wasn't controversial for us, because it was separated by a comma. The TCPA has the modifying phrase, which is following stores and produce, which is the phrase using a random or sequential number generator modifies that integrated, not separated store and produce. It is one concept. That is absolutely good law and a basis for you to say that because ours has a bunch of commas in between, it doesn't follow. Sorry, Your Honors, I went way over. No, no, that's quite all right. Anything else? Okay, Mr. Mark and Mr. Savitsky, thank you both very, very much. And that concludes...